HALL, Appellant,

v.

MARION POWER SHOVEL, INC. et al., Appellees.

[Cite as *Hall v. Marion Power Shovel, Inc.* (1992), 78 Ohio App.3d 23.]

Court of Appeals of Ohio,
Marion County.

No. 9-92-2.

Decided June 4, 1992.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy,* for appellant.

*Vorys, Sater, Seymour & Pease, Robert A. Minor* and *Elizabeth T. Smith,* for appellees.

*Per Curiam.*

This is an appeal by the plaintiff, Bill Hall, Jr. ("appellant"), from a judgment of the Court of Common Pleas of Marion County wherein the court granted the appellees' motion for summary judgment, denied appellant's cross-motion for summary judgment, and dismissed the complaint, assessing costs to appellant.

In 1984, appellant sustained injury to his shoulder and cervical spine while working as an employee of Dresser Industries, Inc., Marion Division. Appellant timely filed a claim for workers' compensation benefits, which Dresser, as a self-insuring employer under R.C. 4123.35,[1] properly certified to the Industrial Commission as required by the commission's administrative rules. Appellant thereafter received benefits administered through R.E. Harrington, Inc., a service company which had contracted with Dresser to administer its employers' self insurance workers' compensation program. Appellant's benefits were terminated by Dresser (through R.E. Harrington) on May 18, 1987, following a determination by an Industrial Commission hearing officer that appellant was no longer entitled to temporary total disability compensation, due to his treating physician's statement that the disability had become permanent. See R.C. 4123.56; *Vulcan Materials Co. v. Indus. Comm.* (1986), 25 Ohio St.3d 31, 25 OBR 26, 494 N.E.2d 1125; *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586.

In February 1988, appellant's treating physician recommended that he undergo surgical excision of a herniated cervical disc. Appellant received authorization from Dresser for further evaluation by a neurosurgeon. However, Dresser refused to approve the surgery on the neurosurgeon's recommendation, and scheduled appellant for an examination by a physician selected by Dresser. Various disputes arose between the parties, over the timing of the surgery and the recommencement of temporary total disability benefits, which were ultimately resolved by the Bureau of Workers' Compensation.

Although appellant eventually underwent surgery, and received all requested workers' compensation benefits, he brought an action against Dresser and Harrington, alleging that his claims were unreasonably delayed, and that he suffered resulting financial ruin because of the defendants' lack of good faith in processing his claims. Appellant's motion for summary judgment on the issue of liability was overruled in the trial court, and appellees' motion for summary judgment was granted. The court also dismissed appellant's com-

---

1. A self-insuring employer under the workers' compensation statutes pays workers' compensation benefits directly to and on behalf of its own employees, as an alternative to paying regular premiums directly into the state Workers' Compensation Fund.

plaint. Appellant appealed the court's decision, asserting the following assignments of error:

## Assignments of Error

"The Trial Court erred in holding that a self-insurer who acts as its own insurer of Workers' Compensation claims is not required to act in good faith in handling its injured employees' Workers' Compensation claims.

"The Trial Court erred in finding that a Self–Insured Employer has no legal duty to pay temporary total Workers' Compensation to an injured employee when it has no good faith basis to contest payment.

"The Trial Court erred in holding that the self-insurer's actions in this case do not constitute bad faith under intentional tort standards.

"The Trial Court erred in granting Summary Judgment for the employer.

"The Trial Court erred in failing to grant Summary Judgment for Plaintiff, Bill Hall, Jr."

We initially note that appellant's first assignment of error misstates the holding of the trial court, and is not supported by the record. It is therefore overruled.

Civ.R. 56(C) provides that a motion for summary judgment must be granted when the properly submitted evidence demonstrates that there are no genuine issues of material fact, and that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." The parties herein admit that there are no disputes over the facts of this case except as to whether appellees acted in good faith in requiring a "second opinion" before authorizing appellant's surgery, and whether appellees acted in good faith in refusing to reinstate temporary total disability benefits without an order from the Industrial Commission.

We find the evidence clearly demonstrates that appellees acted within the dictates of the Workers' Compensation Act and the Industrial Commission's administrative rules. See *State ex rel. Jeep Corp. v. Indus. Comm.* (1991), 62 Ohio St.3d 64, 577 N.E.2d 1095. Although appellees may have been slow to process appellant's claims, their actions and stance were permitted by law, and therefore do not rise to the level of bad faith. We have carefully considered the record in this case, including the opinion and order of the trial court. The trial court, in a well-reasoned opinion authored by Judge William Wiedemann, has accurately summarized the facts and the applicable law, and has addressed all matters properly raised in this court. We further find that the trial judge correctly applied the law to the facts of the case. Thus, we hereby

adopt the opinion of the trial court (see Appendix), and incorporate it into this opinion as our own. Accordingly, appellant's assignments of error are overruled.

Having found no error prejudicial to appellant herein in any of the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

HADLEY, P.J., EVANS and THOMAS F. BRYANT, JJ., concur.

## APPENDIX

WILLIAM WIEDEMANN, Judge.

The motion of the defendants and cross-motion of the plaintiff, Bill Hall, Jr., for summary judgment came on for consideration by the court on the pleadings, interrogatories, affidavits, exhibits and memorandum of the parties.

The material facts are not in dispute. The defendant, Marion Power Shovel Company, is a subsidiary of the defendant, Dresser Industries, which is a self-insurer with respect to its obligation to comply with the Ohio Workers' Compensation law. Harrington, Inc. is a service corporation under contract with Dresser for the purpose of servicing Dresser's workers' compensation claims.

On May 22, 1984, plaintiff sustained an injury in the course of and arising out of his employment with Dresser resulting in a valid workers' compensation claim for injuries to his cervical spine. Plaintiff continued to work following his injury, while being treated at the Marion Regional Health Facility, although his condition deteriorated. On April 14, 1985, it was determined that plaintiff was temporarily and totally disabled as a result of his injury for which he received temporary total disability benefits from Dresser. These benefits continued until February 25, 1987, at which time they were terminated because plaintiff's condition had become permanent. In early 1988 plaintiff was examined by a neurosurgeon at the request of his treating physician and was diagnosed as having degenerative disease of the cervical spine necessitating a cervical disc replacement. Since the neurosurgeon did not connect the requested surgery to a condition allowed in the industrial claim, R.E. Harrington on behalf of Dresser did not initially approve the surgery. R.E. Harrington then obtained authorization from the Bureau of Workers' Compensation to have an independent medical examination of plaintiff, which was performed on April 26, 1988, by Alan L. Longert, M.D., an orthopaedic surgeon. The Industrial Commission deferred action on plaintiff's claim and request for surgery pending receipt of Dr. Longert's medical report. Plaintiff's request for surgery was then assigned for hearing on June 15, 1988, before a district hearing officer, which was attended by counsel for

plaintiff and a representative of R.E. Harrington. The hearing officer did not render an opinion because neither the consultation report of the neurosurgeon nor the report of the orthopaedic surgeon had been filed. R.E. Harrington, at the request of the hearing officer, asked Dr. Longert to expedite the filing of his report, which was not received by R.E. Harrington until July 27, 1989. Dr. Longert confirmed in his report that plaintiff was in need of surgery and was temporarily and totally disabled. On August 12, 1988, R.E. Harrington approved the request for surgery and withdrew its objections to the motion requesting surgery.

Plaintiff and defendants could not agree on a date temporary total disability compensation was to commence, plaintiff contending it should commence on April 26, 1988, the date of the medical examination, and defendants contending that it should commence on the date surgery was performed. Plaintiff requested that the Industrial Commission hold an expedited hearing to determine a date for surgery and for a determination of commencement of compensation. On October 13, 1988, a hearing was held and plaintiff was determined to be entitled to temporary total disability compensation from April 28, 1988, to December 29, 1988. Plaintiff appealed the order of the district hearing officer to the regional board of review, which modified the hearing officer's order by commencing temporary total compensation on April 10, 1987, the date claimant's treating physician evaluated him for surgery, by order dated July 28, 1989.

Plaintiff alleges in his first claim and second claim for relief that the defendant Dresser failed to act in "good faith" (as a result of active malice, fraud or insult) as plaintiff's insurer in contesting plaintiff's claim for benefits before the Industrial Commission, thereby delaying his treatment and benefits which were ultimately awarded to him.

Plaintiff contends that the responsibility of Dresser as a self-insured employer under the Workers' Compensation Act becomes that of an insurer and that its relationship to plaintiff is one of insurer and insured. Although this theory has been suggested in the dicta of Supreme Court decisions cited by plaintiff, this is not the law and this court does not subscribe to this theory. Dresser is not an insurance company and no contract of insurance exists between Dresser and its employees. Dresser was simply granted the privilege, pursuant to R.C. 4123.35, of paying compensation directly to its employees who are entitled to receive benefits under the Workers' Compensation Act. Its responsibility to its employees arises from the employer/employee relationship and not as insurer/insured. If Dresser is considered an insurer it would have a legal duty to act on behalf of its insured employees in the handling and payment of their claims, which is clearly not the law. Its only duty in this

respect is when an employee first submits a claim, Dresser, as a self-insured employer, is required by statute to process the workers' compensation claim as submitted. Dresser fulfilled its duty in this respect.

In the case now before the court the plaintiff has alleged that the defendant's conduct was wilful, malicious, fraudulent and intentional, which allegations encompass the requirements of "bad faith" and for which the plaintiff seeks punitive damages. This will be addressed later in this opinion.

Plaintiff also alleges in his second claim and in his third claim that the defendants' actions were intentional, wilful, malicious or negligent.

The Supreme Court in *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, held that the intentional tort statute R.C. 4121.80 was unconstitutional in toto. The common-law definition of "intentional tort" as stated in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, certiorari denied (1982), 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110, and *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, established the parameters of an employer-related intentional tort which this court must apply to the facts of the case now before it. *Jones* in paragraph one of the syllabus defined an "intentional tort" as follows: "An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur."

The issue then is whether Dresser or its agents failed to follow the law or violated a legal duty imposed upon them in the handling of plaintiff's claim and if so was it done intentionally. Plaintiff contends that the defendants had no legal basis or justification for contesting plaintiff's request for surgery and temporary total benefits and that defendant's actions were for the sole purpose of delay and were therefore intentional. *Balyint v. Arkansas Best Freight System, Inc.* (1985), 18 Ohio St.3d 126, 18 OBR 188, 480 N.E.2d 417, cited by both parties, helps bring the issue into focus. In *Balyint* the employer unilaterally and without cause wrongfully terminated the employee's workers' compensation payments. The court held that such actions by the employer could constitute an intentionally tortious act. *Balyint* is clearly distinguishable from the cause before the court since no legal duty on the part of Dresser had yet occurred. See R.C. 4123.56; Ohio Adm.Code 4121–3–15(B) and (C). Once the Industrial Commission ordered compensation benefits to be paid to plaintiff, Dresser promptly paid them. The court has carefully reviewed the evidence submitted and is unable to find that the defendants did anything that was not in accordance with law. To be sure, there were substantial delays in the processing of plaintiff's claim; however, there is no evidence that the defendants, other than by normal and legal course of events,

caused the delays. There can be no inference of wrongdoing simply because the plaintiff ultimately prevailed in obtaining treatment and benefits.

It is also significant that plaintiff filed a self-insured complaint with the Industrial Commission on September 19, 1988, raising the identical issues now before this court. The complaint was reviewed by the attorney for the legal section of the Industrial Commission and who evaluated plaintiff's complaints. He found that neither the evidence submitted by the claimant nor the evidence in the file supported the complaint and the complaint was found to be invalid.

The court finds that the evidence fails to establish, as a matter of law, that the defendants acted with any deliberate intent to injure plaintiff. Likewise, the court can find no inference that the defendants' actions were malicious, fraudulent, or were performed in bad faith or with ill will, and no evidence has been presented suggesting intentional infliction of emotional distress.

The court therefore finds that there is no genuine issue of any material fact and that the defendants are entitled to summary judgment as a matter of law.

IT IS THEREFORE ORDERED that the motion of the defendants for summary judgment be and hereby is granted and the cross-motion of the plaintiff for summary judgment be and hereby is denied, and the complaint be and hereby is dismissed at plaintiff's costs.