[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 89.]

KOKITKA ET AL., APPELLANTS AND CROSS-APPELLEES, *v*. FORD MOTOR
COMPANY ET AL., APPELLEES AND CROSS-APPELLANTS.

KOKITKA, APPELLEE, V. FORD MOTOR COMPANY, APPELLANT, ET AL.

[Cite as *Kokitka v. Ford Motor Co*., 1995-Ohio-84.]

*Workers' compensation—Erroneous jury instruction not prejudicial, when—*
*Wrongful withholding of payment of medical bills shown, when.*

(Nos. 93-1887 and 93-2084—Submitted April 5, 1995—Decided August 16,
1995.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Cuyahoga County, No.
62410.

APPEAL from the Court of Appeals for Cuyahoga County, No. 63207.

_____

{¶ 1} These two appeals stem from an alleged injury that plaintiff-appellant
and cross-appellee, Charlotte May Kokitka, sustained while doing work at a Ford
Motor plant on May 23, 1988.  On October 7, 1988, Kokitka filed a claim for
compensation and payment of medical expenses pursuant to the Workers'
Compensation Act.  On  May 10, 1989, a formal hearing on the claim was held
before a district hearing officer. The district hearing officer made a finding and
order allowing Kokitka's claim for "[s]pinal strain to soft tissue, left shoulder soft
tissue strain."  At this time, defendant-appellee and cross-appellant Ford Motor
Company ("Ford") had not received any past medical records and was unaware of
the extent of her past medical history. Kokitka was awarded the payment of medical
bills and temporary total compensation from May 24, 1988 through December 5,
1988.  The compensation was awarded based on the medical reports of Drs. Marvin
Miller and Raymond Horwood.  It is undisputed that Ford did not pay any of the

medical bills incurred from the date of the injury and submitted by Drs. Miller and Horwood. Ford also refused to authorize surgery on Kokita's left shoulder.

{¶ 2} The hearing officer's decision was appealed by Ford to the Cleveland Regional Board of Review, which affirmed the hearing officer's order in all respects. Ford subsequently appealed the regional board's finding and order to the Industrial Commission, which held a hearing on the matter on October 10, 1990. The Industrial Commission vacated the board's decision, finding that "the claimant's [sic] did not sustain an injury in the course of and arising out of employment based upon witness depositions & medical evidence on file." On January 11, 1991, Kokitka appealed the Industrial Commission's decision to the court of common pleas.

{¶ 3} The following pertinent facts were adduced at the jury trial.

{¶ 4} At the time of trial, Kokitka had been working at Ford's Cleveland Casting Plant in Brook Park, Ohio, since 1974. Kokitka testified that on May 23, 1988, she was doing assembly-line work at the plant when she reached for a dryer across the line and felt a sharp pain in her back. She left her station and reported to the plant nurse, who filled out a form indicating that Kokitka complained of "severe backache" and "was painting all weekend—Requests to see own Dr. for back problems." The nurse sent Kokitka home for the balance of the shift. Kokitka went to her chiropractor, Dr. Thomas W. Kubin, on that same day, but she apparently did not tell him that her problem occurred at work. The next day, Kokitka went to Dr. Marvin Miller. Dr. Miller recorded the following history: "Pain occurred after patient lifted something at work. Pain is localized in mid-back. Patient never had back problems previously."

{¶ 5} Kokitka testified that the primary problem was her entire back from the top of her neck to the bottom of her spine. Kokitka was treated by Dr. Miller for several months. Kokitka testified that she informed Dr. Miller that she had some minor problems in the past, but had never experienced anything so severe. She

went back to work on December 5, 1988, but her condition began to deteriorate. She worked until August 8, 1989 and has not returned to work since then.

{¶ 6} Dr. Miller referred Kokitka to Dr. Raymond Horwood, an orthopedics specialist. Kokitka also informed Dr. Horwood that she had some minor problems in the past, but never anything like this. On March 25, 1991, Dr. Horwood performed surgery on Kokitka's left shoulder.

{¶ 7} Kokitka testified to various ailments prior to the incident on May 23, 1988. In June 1974, Kokitka was treated by a Dr. Maciulis, her family physician, for a sore back. In December 1974, she was treated by a Dr. Wendling, a chiropractor, for pain in her back extending up toward her shoulders, which she experienced at work. In 1980, she was treated by another chiropractor, a Dr. Keith, for a sharp pain in her back, also first experienced at work. In 1984, Kokitka was treated by Dr. Maciulis for pain in her back and neck first experienced while at work. In May 1987, she was treated by Dr. Kubin for a sharp pain in her back that occurred while lifting an object at work. She saw Dr. Kubin again in June and August 1987. Despite these previous injuries, the injury of May 23, 1988 was Kokitka's only workers' compensation claim.

{¶ 8} The videotaped deposition testimony of Drs. Miller and Horwood was played for the jury at trial. Dr. Miller gave his opinion that based on the history obtained from Kokitka, examinations, and a review of her records, Kokitka's diagnosed conditions were causally related to the work incident of May 23, 1988.

{¶ 9} Dr. Horwood gave his opinion that based on his examinations of Kokitka, the patient records, and her history, there was a direct causal relationship between the strain to the tendons of the left rotator cuff and the work incident of May 23, 1988. On cross-examination, Dr. Horwood was presented with Kokitka's deposition testimony concerning her doctors' visits in 1974, 1980, 1984 and 1987. Dr. Horwood characterized the history which was given to him by Kokitka and upon which he relied in rendering his earlier opinion as incomplete. Based on a

more complete history that Kokitka had shoulder pain, neck pain, thoracic spine and lumbar symptoms in the past, Dr. Horwood concluded that Kokitka's strain of her spine and left rotator cuff were all "exacerbations of prior conditions" that were brought about by the events of May 23, 1988.

{¶ 10} The jury returned a verdict in favor of Ford, finding that none of Kokitka's ailments was proximately caused by the work-related incident of May 23, 1988.

{¶ 11} Kokitka appealed this decision to the Eighth District Court of Appeals, which reversed the judgment and remanded the cause for a new trial on the basis of an improper jury instruction regarding expert witness testimony. This decision is now being appealed to this court as case No. 93-2084.

{¶ 12} Case No. 93-1887 stems from the same set of facts but from a different lawsuit filed by Kokitka and her husband on August 7, 1990. This lawsuit alleged that Ford and certain other defendants acted in bad faith in contesting her claim, refusing to pay her temporary total disability compensation and medical bills, and refusing to authorize her request to pay Dr. Horwood for shoulder surgery. Ford filed a motion for summary judgment, which was granted by the trial court. The Eighth District Court of Appeals affirmed the judgment of the trial court with respect to the issues regarding temporary total disability and the request for shoulder surgery. However, it reversed and remanded on the issue of whether Ford acted wrongfully in not paying her various medical bills. Kokitka appeals that part of the decision upholding the trial court's grant of summary judgment. Ford cross-appeals the appellate court's decision to reverse and remand on the issue of payment of medical bills.

{¶ 13} These consolidated cases are now before this court pursuant to the allowance of motions and a cross-motion to certify the record.

_____

*Sindell, Lowe & Guidubaldi* and *Steven A. Sindell,* for appellants and cross-appellees in case No. 93-1887 and for appellee in case No. 93-2084.

*Willacy & LoPresti* and *Aubrey B. Willacy; Mayer, Brown & Platt* and *Lawrence C. Marshall*, for appellees and cross-appellants in case No. 93-1887 and for appellant in case No. 93-2084.

_____

*Per Curiam.*

Case No. 93-2084

{¶ 14} The issue before this court in case No. 93-2084 is whether the trial court erred in giving a jury instruction on the weight to be given expert testimony. The charge to the jury instructed as follows:

"If the jury finds to be true a state of the facts materially different from that assumed as true by any such expert, then, of course, the jury should give no weight at all to the conclusions or opinions to [*sic*] such expert based upon such assumed facts."

{¶ 15} It is well established that the jury alone, as the trier of fact, has the duty to decide what weight should be given to the testimony of any expert witness. See *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. The above-cited instruction impermissibly usurped the jurors' role in evaluating the opinions of Drs. Miller and Horwood by requiring that the jurors give such testimony no weight at all if they found it was not based on the facts. Thus, the trial court erred in so instructing this jury. The issue, however, is whether the error prejudiced the plaintiff in this case.

{¶ 16} In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and "must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 171. In the present case, given the nature of the experts'

opinions, the erroneous jury instruction and the evidence, we hold that the erroneous jury instruction did not mislead the jury in a matter materially affecting Kokitka's substantial rights.

{¶ 17} In order for the erroneous jury instruction to have been triggered, the jury had to find, as a threshold matter, that the facts were materially different from the facts assumed by the experts in their opinions. In other words, the erroneous instruction did not come into play unless the jury found facts materially different from the facts assumed by the expert doctors. If the jury did not find facts that were materially different from the facts assumed in the experts' opinions, then the instruction was irrelevant, would be disregarded by the jury, and, therefore, could not have materially affected Kokitka's substantial rights.

{¶ 18} In this case, the only material facts that were possibly left out of the experts' opinions, according to both Kokitka and Ford, concerned Kokitka's preexisting extensive history of back, shoulder and neck pain. To trigger the application of the erroneous instruction, the jury, therefore, necessarily would have had to find that Kokitka had a history of back injury symptoms prior to her industrial injury. Otherwise, the jury instruction would not have applied.

{¶ 19} Kokitka's expert, Dr. Miller, confirmed that his opinion hinged on a full medical history. He agreed that "in order * * * to rule out the prior history as being the cause of the problem which popped up on May 23, 1988, * * * you would have to know the medical details of * * * [w]hat part of the body it was, how severe it was, how long it lasted." He acknowledged that it was impossible for him to determine what caused the injury without "sharp, detailed knowledge of what that prior history was." The other expert for Kokitka, Dr. Horwood, after being presented with a more complete medical history on cross-examination, concluded that Kokitka's strain of her spine and left rotator cuff were "all exacerbations of prior conditions."

**{¶ 20}** The difference between the jury instruction as given and a proper jury instruction is that the erroneous instruction directed the jury to disregard the experts' opinion if the jury found the facts to be materially different from the facts underlying the hypothetical question. A proper instruction would have directed the jury to decide what weight, if any, to give such an opinion, given the materially different factual basis for the opinion. If the jury believed Kokitka had a history of back problems prior to her accident, then what was the value of an opinion which did not consider such a history? In a case of this nature, the doctor's opinion based on an incomplete or inaccurate medical history is pointless. The purpose of such an opinion is to evaluate causation through timing of symptoms together with past medical history. Considering the circumstances of this case, we find the value of the expert doctors' opinions is not sufficient to find prejudicial error in instructing the jury to disregard the opinions rather than weigh them.

**{¶ 21}** Moreover, the jury, by special interrogatories, found that while an accident occurred on May 23, 1988, such accident did not "directly and proximately" cause any of Kokitka's back problems. The erroneous jury instruction did not mandate such a conclusion by the jury. As this separate finding of the jury is not controlled by the erroneous jury instruction, that jury finding also supports our holding that the instruction was harmless.

**{¶ 22}** As the erroneous jury instruction did not affect Kokitka's substantial rights, we reverse the judgment of the court of appeals in case No. 93-2084 and reinstate the jury verdict.

Case No. 93-1887

**{¶ 23}** The issue before this court in case No. 93-1887 is whether there are genuine issues of fact to support the Kokitkas' claim that Ford acted in bad faith in the course of administering and resisting Kokitka's workers' compensation claims. For the following reasons, we agree with the court of appeals that summary judgment was properly granted in favor of Ford on all of the Kokitkas' allegations

of bad faith except for the allegation of failure to pay medical bills under R.C. 4123.515. Accordingly, we affirm the judgment of the court of appeals.

{¶ 24} In *Balyint v. Arkansas Best Freight Sys., Inc.* (1985), 18 Ohio St.3d 126, 18 OBR 188, 480 N.E.2d 417, this court held that "[a]n employee of a self-insured employer may maintain a cause of action against the employer for the intentional and wrongful termination of workers' compensation payments." *Id.* at syllabus. This common-law cause of action for intentional tort requires proof that the employer intentionally failed to follow the law or violated a legal duty imposed upon it in the handling of its employee's claim. See *id.*; see, also, *Hall v. Marion Power Shovel, Inc.* (1992), 78 Ohio App.3d 23, 28-29, 603 N.E.2d 427, 431. In *Balyint*, we found the employee alleged sufficient facts to overcome a motion to dismiss, where the complaint stated that the self-insuring employer paid the employee benefits for two and a half months and then without cause terminated the employee's workers' compensation payments.

{¶ 25} In the present case, the Kokitkas allege that Ford acted in bad faith during the administrative process because former R.C. 4123.515 (since repealed) required Ford to pay compensation and medical benefits as directed by the regional board of review. The merit of each of the Kokitkas' allegations of bad faith will be discussed separately below.

{¶ 26} Initially, the Kokitkas argue that Ford acted in bad faith in failing to continue to pay temporary total compensation for a period beyond that ordered by the board. Affirming the district hearing officer's order, the board ordered temporary total disability for a "closed period" ending December 5, 1988, when Charlotte Kokitka returned to work. Temporary total disability benefits may be terminated when a claimant returns to work. *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 632, 23 O.O.3d 518, 519, 433 N.E.2d 586, 588. The record reflects that Ford fully paid Kokitka for the "closed period." No obligation to pay Kokitka for a second, separate period of temporary total disability ever arose,

8

as no order to make such payments was ever made. Thus, unlike *Balyint*, the actions of the employer in the present case were permitted by law and therefore do not rise to the level of bad faith. Accordingly, summary judgment was properly granted on this issue.

{¶ 27} The Kokitkas next argue that Ford acted in bad faith in deciding to contest Charlotte's request for acromioplasty surgery to correct a torn rotator cuff. However, this request to voluntarily authorize surgery was not made until January 15, 1990 and, thus, was not the subject of the order affirmed by the board, which was dated December 6, 1989. Furthermore, Ford's local workers' compensation supervisor, Michael Reidy, testified that he asked for a hearing on this request in part because the chief occupational physician at Ford, Dr. Jose Chalela, determined that such surgery was not required for the allowed condition—the "left shoulder soft tissue strain." Therefore, we find that Ford clearly did not act in bad faith in declining to voluntarily approve this request and in exercising its legal right to contest the request for surgery.

{¶ 28} The Kokitkas next allege that Ford acted in bad faith in requesting a hearing on the Request for Change of Physician from Dr. Miller to Dr. Horwood, made on February 18, 1990. However, Reidy testified that Ford's records showed that Dr. Kubin had treated Kokitka and that both Drs. Miller and Horwood were treating her. Ford requested a hearing to resolve the matter because, under Ohio Adm.Code 4121-17-05, Ford was not required to pay for "treatment by more than one physician for the same condition over the same period of time." A hearing was requested to determine who was treating Kokitka at what times and because of the fact that the Request for Change of Physician had been sought in conjunction with the request for surgery. Therefore, we find that Ford was legally justified in requesting a hearing on the Request for Change of Physician and, therefore, its actions clearly did not amount to bad faith.

**{¶ 29}** Ford alleges on cross-appeal that the trial court properly granted summary judgment to Ford on the Kokitkas' claim that Ford wrongfully withheld payment of medical bills after the board had allowed the claim. The court of appeals reversed the trial court's granting of summary judgment on this issue on the ground that former R.C. 4123.515 imposed on Ford the obligation to pay Kokitka's medical bills. We agree with the court of appeals.

**{¶ 30}** Former R.C. 4123.515 stated:

"In all other cases, if the decision of the district hearing officer is appealed by the employer * * *, the bureau of workers' compensation shall withhold compensation and benefits during the course of the appeal to the regional board of review, but where the regional board rules in favor of the claimant, compensation and benefits shall be paid by the * * * self-insuring employer whether or not further appeal is taken."

**{¶ 31}** Pursuant to former R.C. 4123.515, Ford was obligated to pay those medical bills which were the subject of the district hearing officer's decision. Thus, we conclude that there are genuine issues of fact as to whether Ford wrongfully withheld such payments.

**{¶ 32}** Accordingly, the court of appeals' judgment in case No. 93-1887 is affirmed in all respects.

*Judgment reversed*
*in case No. 93-2084.*

MOYER, C.J., WRIGHT, PFEIFER and COOK, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

*Judgment affirmed*
*in case No. 93-1887.*

DOUGAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., WRIGHT and COOK, JJ., dissent.

―――――――――――

**DOUGLAS, J., concurring in part and dissenting in part.**

{¶ 33} I concur with the judgment of the majority in its affirmance of, in all respects, the judgment of the court of appeals in case No. 93-1887. I dissent from the judgment of the majority in case No. 93-2084. I, once again, would affirm the judgment of the court of appeals.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing opinion

————————————

**COOK, J., concurring in part and dissenting in part.**

{¶ 34} As to case No. 93-2084, I agree with the majority that the jury instruction was erroneous but not prejudicial. As to case No. 93-1887, I respectfully disagree with the majority's view that genuine issues of material fact exist as to whether Ford wrongfully withheld payment of Kokitka's medical bills.

{¶ 35} While I agree that generally R.C. 4123.515 imposed on a self-insurer an obligation to pay a claimant's medical bills where the regional board has affirmed the allowance of a claim, an employer has a duty to pay only for treatment "rendered as a direct result of an injury sustained * * * by a claimant in the course of and arising out of employment for which the claim was allowed." Ohio Adm. Code 4123-7-02. The issue is whether Ford could determine that Kokitka's submitted bills were subject to payment in accordance with the allowed claim.

{¶ 36} The evidence submitted in support of its motion for summary judgment showed that Ford had legitimate reasons for requesting a hearing prior to paying the bills submitted by Kokitka. Those bills did not affirmatively appear to be related to the allowed condition. For example, Kokitka's doctor declined to answer essential questions on the Attending Physician's Fee Bills form, including whether the condition was solely the result of the injury and whether the treatments related solely to the recognized conditions. Without answers to these questions Ford could not be expected to evaluate whether the physician's treatment was for the allowed condition. Further, although the claim had been allowed for "[s]pinal strain

to soft tissue, left shoulder soft tissue strain," some of the bills also described treatment to the right shoulder.

{¶ 37} Given the unrefuted evidence from Ford that it had a valid basis for questioning the submitted bills, I would find that plaintiff failed to meet its burden of showing the wrongfulness of delaying payment of the bills pending a hearing.

{¶ 38} Thus, I would reverse the court of appeals' decision in case No. 93-1887 and reinstate summary judgment to Ford on the payment of medical bills issue.

MOYER, C.J., and WRIGHT, J., concur in the foregoing opinion.

_____