OPINION
This matter presents a timely appeal from a jury verdict and judgment rendered upon such verdict by the Mahoning County Common Pleas Court, awarding plaintiff-appellant, Crest Polymers, Inc., the sum of $20,560.00 on its complaint and defendant-appellee, Travis Products, Inc., the sum of $93,859.19 on its counterclaim.
Appellant is a broker of resin, which is a material used in the plastics industry. Appellant purchases resin from suppliers and sells it to injection molding companies. Appellee is a company that sells and markets plastic door-lite frames. Appellee receives its door-lite frames from its affiliate Ry-Marc Plastics (Ry-Marc), which manufactures the frames through the injection molding process.
On August 19, 1994, appellee placed an order with appellant for two loads of resin described as "high impact polystyrene" (HIPS) to be shipped to Ry-Marc. (Joint Exhibit 1) The first load was to consist of 26,940 pounds of HIPS for the cost of $14,547.60. The second load was to consist of 42,000 pounds of HIPS for the cost of $22,260.00 and called for a melt index specification of "3 to 11 MI."
Appellant arranged for the first load to be delivered to Ry-Marc from Gilchrist Polymer Center, Inc. (Joint Exhibit 2) The first load of HIPS arrived at Ry-Marc according to specification, and appellee paid appellant the price listed on the invoice.
Appellant arranged for the second load of HIPS to be delivered to Ry-Marc from Goldmark Plastic Compounds (Goldmark) Goldmark provided appellant with a bill of lading describing the resin as "Impact Offgrade PS" (Joint Exhibit 3) and an invoice describing the resin as "NATL Impact PS." (Plaintiff's Exhibit 3). Upon delivery to Ry-Marc, appellant provided appellee with an invoice describing the resin as "High Impact Polystyrene 3 to 11 MI," conforming to the order placed by appellee. (Plaintiff's Exhibit 2). Appellee made a partial payment to appellant for the second load, leaving an unpaid balance of $18,216.00.
On November 8, 1994, appellee ordered a third load of HIPS. This order requested 41,120 pounds of "High Impact P/S" resin for the cost of $20,560.00. (Joint Exhibit 4). Appellant arranged for the third load of HIPS to be delivered from Shlome Sales Company, Inc. Upon delivery to Ry-Marc, appellant provided appellee with an invoice describing the resin as "High Impact P/S Repro White," which indicated that the HIPS was reprocessed. (Plaintiff's exhibit 4). Appellee did not pay appellant for the third load of HIPS.
Appellee used the resin that it received from appellant to manufacture door-lite frames. Appellee then shipped the frames to its customers, some of whom reported that the frames were defective.
On September 13, 1995, appellant filed a complaint with the trial court alleging that appellee owed the sum of $22,260.00 for the second load of resin and the sum of $20,560.00 for the third load of resin. Appellee filed an answer and counterclaim alleging that because appellant failed to provide it with the specific resin it had ordered, the door-lite frames that appellee provided to its customers failed. As a result, appellee alleged that it suffered specified damages in the amount of $53,600.00, as it had to either remanufacture the frames or give a credit to its customers. Appellee also alleged that it lost customers and thereby, suffered unspecified damages not exceeding $500,000.00.
A jury trial commenced on September 28, 1998. Upon due deliberation of the testimony and evidence presented at trial, the jury awarded appellant the sum of $20,560.00 on its complaint and appellee the sum of $93,859.19 on its counterclaim. The trial court entered judgment upon the jury verdict. Appellant then filed a motion for new trial or remittitur on October 15, 1998, which was denied by the trial court. This appeal followed.
Appellant sets forth five assignments of error on appeal.
Appellant's first assignment of error alleges:
 "The judgment granting appellee Travis Products all of its prayed for damages on its counterclaim is not sustained by the weight of the evidence."
Due to our resolution of appellant's second assignment of error, appellant's first assignment of error is rendered moot. See, App.R. 12(A)(1)(c)
Appellant's second assignment of error alleges:
 "The trial court erred in permitting the jury to hear the testimony of Edwin Davis, appellee's expert witness, concerning test results conducted by appellee and appellant, thereby leading the jury to conclude through expert evidence and testimony that the resin material at issue was not high impact polystyrene when said test result evidence was later excluded by the court as hearsay evidence."
At appellant's request, Polyhedron Laboratories, Inc. (Polyhedron), a plastics testing company located in Houston, Texas, conducted a test on a plastic picture frame from Ry-Marc. Polyhedron prepared an analytical report regarding the test results. (Defendant's Exhibit 2). At trial, appellee cross-examined appellant's salesman, Gary Baxter (Baxter), regarding the report. Appellant objected on the basis that appellee had not established a foundation for the exhibit. (Tr. 121). The trial court sustained appellant's objection. Subsequently, the trial court allowed appellant's president, Robert Hiddeman, to testify as to the content of Defendant's Exhibit 2 over appellant's objection. (Tr. 195)
Appellee then called Edwin L. Davis (Davis) as an expert in the field of plastics. Davis did not prepare the report and testified that he did not believe he had seen it before. (Tr. 240). Appellee questioned Davis about the results contained within the report. Again, appellant objected on the basis that no foundation had been established. The trial court overruled appellant's objection and allowed Davis to testify as to the test results. (Tr. 240-41). Based on the results of the test indicated in Defendant's Exhibit 2, Davis testified that the resin that appellee received from appellant was not HIPS; rather, it was medium-impact polystyrene. (Tr. 241)
Appellee maintains that in addition to testimony concerning the test results, Davis provided relevant testimony from which the jury could have concluded that appellant did not provide appellee with HIPS. Davis testified that the term "offgrade" referred to off-grading a material because of melt flow, impact or color. (Tr. 242). He also testified that when material is reprocessed, some of the polymer is destroyed, and chemicals must be added to repair it. (Tr. 228). Because appellee did not order HIPS designated as "offgrade" or "reprocessed," appellee argues that the jury could have concluded that the material supplied by appellant was either defective or non-conforming.
In Kovshovik v. Mandik (Sept. 29, 1999), Columbiana App. No. 97-CA-41, unreported, this court noted that "a trial court has broad discretion in the admission of evidence and its decision will not be overturned absent an abuse of discretion." (citingState v. Combs (1991), 62 Ohio St.3d 278, 284). The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Tracy v. Merrell Dow Pharmaceuticals, Inc.
(1991), 58 Ohio St.3d 147, 152.
Ultimately in this matter, Defendant's Exhibit 2 was not admitted into evidence. Appellant requested that the trial court provide an instruction to the jury to disregard any testimony concerning the test results. Explaining that some of the testimony with regards to the test results was offered without objection, the trial court denied appellant's request. The trial court stated, "I think my general instruction in the charge relative to the jury disregarding any objection which was sustained and not speculating as to what the answer might have been but disregarding an answer which was stricken will suffice." (Tr. 408). However, the trial court made no such instruction. In fact, the trial court granted the jury permission to consider the test results, stating:
 "Questions have been asked in which an expert witness was permitted to assume that certain facts were true and to give an opinion based upon such an assumption. You must determine whether the assumed facts upon which the expert based his opinion are true. If any assumed fact was not established you will determine its effect upon the opinion of the expert." (Tr. 462). (Emphasis added).
The trial court may not have abused its discretion in allowing Davis to testify as to the test results prior to its exclusion from evidence. However, the trial court clearly erred when it later permitted the jury to consider Davis' testimony based upon the analytical report of which he had no personal knowledge and which was excluded from evidence. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence
at the hearing." Evid.R. 703. (emphasis added). "`The hypothesis upon which an expert witness is asked to state an opinion must be based upon facts within the witness' own personal knowledge orupon facts shown by other evidence.'" State v. Chapin (1981),67 Ohio St.2d 437, 442.
"The decision as to the content of a jury instruction is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." Chicone v. Mayo Orvets Real Estate (December 1, 1998), Mahoning App. No. 96-CA-28, unreported (citing Burke v. Schaffner (1996), 114 Ohio App.3d 655)
In examining errors in a jury instruction, a reviewing court must consider the jury instruction as a whole and must determine whether such instruction probably misled the jury in a matter materially affecting the complaining party's substantial rights. Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89, 93.
In this case, the jury heard Davis testify as to his opinion of the test results although they were never authenticated. Nonetheless, the trial court instructed the jury to determine whether the facts upon which Davis based his testimony were true. This instruction clearly misled the jury into believing that they could consider the test results. Instead, the trial court should have instructed the jury to disregard any testimony related to the test results.
Because the trial court permitted the jury to consider testimony based upon exhibits excluded from evidence as hearsay, appellant's second assignment of error is found to be with merit.
Appellant's third assignment of error alleges:
 "The trial court committed reversible error in permitting the jury to consider an inapplicable and/or inappropriate jury charge on the issue of accommodation of goods when appellee failed to establish that an accommodation of goods had occurred."
At the conclusion of the trial, the trial court instructed the jury regarding R.C. 1302.09(A)(2) over appellant's objection. R.C. 1302.09(A)(2) provides:
 "An order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods, but such a shipment of non-conforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer."
Appellant argues appellee did not establish that an accommodation occurred. First, appellant insists that appellee did not establish that the material sent to Ry-Marc was non-conforming. Baxter and Hiddeman each testified that they believed appellee received what it had ordered. (Tr. 87-88; Tr. 143-146) The evidence indicated that appellee accepted the material and used the entire amount. (Tr. 327; 331). Therefore, appellant maintains that appellee did not establish the requirement of R.C.1302.09(A)(2) that the material shipped to Ry-Marc was nonconforming.
Next, appellant argues that even if the material was non-conforming, appellee presented no evidence to indicate it was notified by appellant that the shipment was merely an accommodation. Therefore, appellant argues that the requirements of R.C. 1302.09(A)(2) were not met and it was improper for the trial court to instruct the jury on this statute.
We find that the evidence showed that the material in question was non-conforming. Appellee ordered three loads of HIPS from appellant. (Joint Exhibits 1 and 4). The bill of lading for the second load indicated that the material was "Impact Offgrade PS." (Joint Exhibit 3). The invoice provided to appellant for the second load described the material as "NATL Impact PS." (Plaintiff's Exhibit 3). The invoice sent to appellee for the third load identified the material as "High Impact P/S Repro White." (Plaintiff's Exhibit 4). Therefore, sufficient evidence was presented by which the jury could have concluded that the material was non-conforming.
Moreover, the jury could have concluded that appellant provided notice to appellee that the material was an accommodation. At trial, Baxter was asked, "Do you recall specifically whether or not you had a discussion with [appellee's president, Joseph Soltesiz (Soltesiz)] about the third load being reprocessed material?" (Tr. 94). He replied, "It was presented that way, yes." (Tr. 94). Furthermore, the invoice for the third load identified the material as "High Impact P/S Repro White" although appellee ordered "High Impact P/S." (Plaintiff's Exhibit 4). Such evidence supports a finding that appellant notified appellee that the third load of resin was sent as an accommodation. Therefore, the trial court properly instructed the jury regarding R.C. 1302.09(A)(2)
Appellant's third assignment of error is found to be without merit.
Appellant's fourth assignment of error alleges:
 "The damages award received by appellee was contrary to law as appellee failed to meet the notification provisions of Ohio Revised Code § 1302.65 by notifying appellant of any problems with the materials appellee received in a timely and commercially reasonable manner."
R.C. 1302.65(C)(1) provides, in pertinent part:
"Where a tender has been accepted:
 "(1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; * * *"
Appellant claims that appellee first learned of a problem with the material in September 1994. (Tr. 296). Baxter testified that he had a conversation with Soltesiz on September 14, 1994. Soltesiz indicated to Baxter that appellee might be having a problem with the material. Baxter told Soltesiz to contact him about the problem and yet, Soltesiz never did so. (Tr. 83)
On January 12, 1995, appellee sent a letter to appellant indicating that it was experiencing financial difficulty and would soon pay its account with appellant. The letter made no mention of any problem with the material. (Plaintiff's Exhibit 7) Appellee received pictures of broken frames on January 18, 1995. (Plaintiff's Exhibit 20). However, appellant claims that it was not until March 20, 1995 that appellee first notified it of a problem with the material. (Plaintiff's Exhibit 11). Appellant claims that six months passed from the time appellee learned that there was a problem with the materials and the time at which appellee notified appellant of such problem. Appellant argues that six months is an unreasonable amount of time and appellee should therefore be barred from recovering damages.
Finally, appellant argues that appellee waived its right to recover damages resulting from defective material when, after notifying appellant that there was a problem with the material, it nonetheless indicated a willingness to pay for the material.
Appellee asserts that it did not know that there was a problem with the material until its customers complained of defective frames. Appellee argues that it did not know of such problem at the time the material was delivered because appellant invoiced appellee for "HIPS" rather than "Impact Offgrade PS." Appellee insists, therefore, that it should not be barred from recovery.
The official comment to R.C. 1302.65 states, in pertinent part, "The time of notification is to be determined by applying commercial standards to a merchant buyer." The trial court instructed the jury in this regard, stating:
 "If you find that the buyer had a reasonable opportunity to inspect the goods, and after such reasonable opportunity, the buyer failed to make an effective rejection of the goods, the buyer has accepted the goods. In order to make an effective rejection, the buyer must, within a reasonable time after the seller has made the goods available, notify the seller that the buyer is rejecting the goods. What a reasonable time is depends on the facts and circumstances in evidence." (Tr. 471).
While the jury could have determined that appellee first learned about the problem with the material in September, 1994, sufficient evidence existed to enable the jury to conclude that appellee learned of the problem at a later date. Asked when he first discovered problems with the material, Soltesiz testified that it was in September. However, he went on to testify that he believed the customer who brought the problem to his attention was using oversized screws in the frame. After several of his suggestions on how to use the product failed, Soltesiz visited the customer in February or March. Upon learning that the problem resulted from defective resin rather than an oversized screw, Soltesiz notified appellant. (Tr. 296-98)
 "In the event the evidence is susceptible to more than one interpretation, [appellate courts] must construe it consistently with the lower court's judgment." Gerijo, supra at 226.
After hearing the testimony and viewing the evidence, the jury awarded appellee the sum of $93,859.19. Because sufficient evidence was presented to enable the jury to conclude that appellee notified appellant of a problem within a commercially reasonable amount of time, appellee's award is not contrary to law.
Appellant's fourth assignment of error is found to be without merit.
Appellant's fifth assignment of error alleges:
 "The trial court abused its discretion in failing to grant appellant a new trial and/or a remittitur, thereby affecting the substantial rights of the appellee."
Given our discussion and conclusion under appellant's second assignment of error, wherein we found that the trial court clearly erred in permitting the jury to consider testimony based upon excluded evidence, appellant is entitled to a new trial.
Appellant's fifth assignment of error is found to have merit.
The judgment of the trial court is affirmed in part, reversed in part, and this cause is remanded for further proceedings in accordance with law and consistent with this opinion.
Donofrio, J. and Waite, J., concurs.
APPROVED:
 ______________________________ EDWARD A. COX, PRESIDING JUDGE