OPINION
Appellant Custom Design Technologies, Inc. ("CDT") appeals the decision of the Court of Common Pleas, Stark County, which granted judgment in favor of Appellee F.C. Machine Tool Design, Inc. in an action for breach of contract filed by appellee. The relevant facts leading to this appeal are as follows.
On June 21, 1999, Appellee F.C. Machine received from Alliant Aerospace Company of Magna, Utah ("Alliant"), a purchase order for a large steel mandrel cone for use in industrial curing processes. Appellee is primarily a machining facility, so it turned to Appellant CDT to handle the actual fabrication of the cone, after which appellee planned to finish the piece as per the Alliant purchase order. On July 16, 1999, appellee and CDT entered into a written contract for the purchase of the cone at a price of $39,000, with a deduction of $300 per day for each day delinquent past the agreed delivery date of August 15, 1999.
Appellee was not satisfied with CDT's fabrication of the cone, as further detailed infra, and on October 4, 1999 filed an action for breach of contract in the Summit County Court of Common Pleas. CDT filed a counterclaim against appellee on November 3, 1999. CDT thereafter moved the Summit County Court to transfer the case to the Stark County Court of Common Pleas, which was accomplished on September 15, 2000.
The matter proceeded to a jury trial on December 18, 2000. Prior to deliberations, CDT moved to submit certain interrogatories to the jury, which the trial court denied. On December 20, 2000, the jury rendered a verdict in favor of appellee for $120,000, and also ruled in favor of appellee on CDT's counterclaim.
CDT filed its notice of appeal on January 17, 2001, and herein raises the following eight Assignments of Error.
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO RULE IN FAVOR OF CUSTOM DESIGN TECHNOLOGIES ON THE ISSUE OF ACCEPTANCE OF THE MANDREL CONE AND RELEASE.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO SUBMIT TO THE JURY DEFENDANT-APPELLANT'S PROPOSED JURY INTERROGATORIES NUMBERED 1, 2, 3.
 III. THE COURT COMMITTED REVERSIBLE ERROR IN FAILING TO SUBMIT TO THE JURY DEFENDANT-APPELLANT'S PROPOSED JURY INTERROGATORY NUMBERED 10.
 IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GIVING PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 6.
 V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GIVING PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 7.
 VI. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT CUSTOM DESIGN TECHNOLOGIES' CONTRACT WITH F. C. MACHINE AND TOOL REQUIRED THAT THE MANDREL CONE BE PROVIDED TO F. C. MACHINE ON OR BEFORE AUGUST 15, 1999 AND THAT THIS WAS AN EXPRESS WARRANTY.
 VII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO DISMISS THIS ACTION BY REASON THAT SAID ACTION WAS NOT BROUGHT BY THE REAL PARTY IN INTEREST.
 VIII. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In its First Assignment of Error, CDT argues, in regard to the denial of a directed verdict, that the trial court erred in refusing to find that appellee made a valid acceptance of the mandrel cone. We disagree.
The standard for granting a directed verdict is set out in Civ.R. 50(A)(4):
* * *
 (4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
R.C. 1302.64 reads in pertinent part as follows:
(A) Acceptance of goods occurs when the buyer:
 (1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; * * *.
Additionally, "[u]nder the Uniform Commercial Code, R.C. 1302.01 et seq., delivery of goods does not in and of itself constitute acceptance."Trustcorp Bank of Ohio v. Cox (Sept. 13, 1991), Lucas App. No. L-90-231, unreported, quoting Capitol Dodge Sales, Inc. v. Northern Concrete Pipe,Inc. (1983), 131 Mich. App. 149, 346 N.W.2d 535. "Rather, `[a]cceptance' is a term of art which must be distinguished from a variety of other acts which the buyer might commit." Id., quoting White Summers, Handbook of the Law Under the Commercial Code (2 Ed.1980) 296, Section 8-2. Thus:
 [A]cceptance of goods is only tangentially related to possession and, normally, the buyer will have had possession of the goods some time before he can accept them. Id. That is, acceptance does not occur unless the buyer is provided with a reasonable time to inspect the goods and accept them despite any nonconformity or the buyer fails to effectuate a seasonable rejection of the goods for their nonconformance under R.C. 1302.60(A) and R.C. 1302.61(A) or the buyer does any act which is inconsistent with the seller's ownership. Anderson, Uniform Commercial Code (3 Ed.1983) 103, Section 2-606:17.
Id.
Turning to the facts of the case sub judice, the mandrel cone was first shipped from CDT to appellee in August, 1999. Tr. at 268. Appellee inspected the item and found it was not within the tolerances per the parties' agreement. Appellee then re-shipped the item back to CDT to provide an opportunity to correct the problems. In September 1999, CDT took steps to ship the cone to appellee's shop a second time. Appellee's C.O.O. and Treasurer, Robert George, sent a letter to CDT on September 8, 1999, indicating payment would be made "* * * within 30 days after you have completed the agreed-upon work scope." The letter contains a typewritten addition at the bottom of the page, signed by Gary Lewis, an estimator for appellee, which reads as follows:
 The P.A.F. Mandrel has been inspected and is released for shipment to F.C. Machine Tool Design, Inc. As stated above, the Mandrel was fabricated and thermo stress relieved per drawing No. 83343J00901, per purchase order No. FC2535-9408. This release verifies that the agreed upon work scope has been completed following the initial 8/13/99 ship date.
Upon review of the record and the unsuccessful attempts portrayed therein to correct the problems with this unwieldy item, we are not persuaded that a directed verdict was warranted on the issue of acceptance by virtue of appellee's alleged "release" above. "Notice of a buyer's nonacceptance or revocation of acceptance of goods need not be in any particular form, but may be implied from conduct." Kabco EquipmentSpecialists v. Budgetel, Inc. (1981), 2 Ohio App.3d 58, paragraph one of the syllabus. We hold the trial court did not err in allowing the question of acceptance of the goods to go to the jury.
The First Assignment of Error is overruled.
 II, III
In its Second and Third Assignments of Error, CDT contends the trial court erred in failing to submit proposed jury interrogatories 1, 2, 3, and 10, which read as follows:
 1. Do you find that Alliant Tech Systems provided preliminary plans and specifications to F.C. Machine?
 2. Do you find that F.C. Machine provided preliminary plans and specifications to Custom Design?
 3. Do you find that Alliant Tech Systems made changes to the plans and specifications after it had let the contract to F.C. Machine?
 10. Do you find that F.C. Machine by and through its employee/agent, Gary Lewis, accepted the completed mandrel/cone?
Jury interrogatories are addressed in Civ.R. 49(B), which states:
 The court shall submit written interrogatories to the jury, gathered with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the request prior to their arguments to the jury, that the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law.
In Cincinnati Riverfront Coliseum, Inc. v. McNulty Company (1986),28 Ohio St.3d 333, the Ohio Supreme Court held Civ.R. 49 places a mandatory duty upon the trial court to submit interrogatories to the jury, provided the interrogatories are in a form the court approves. An interrogatory must be drafted to test a finding on a determinative issue, and a trial court is not required reformulate a defective interrogatory. Instead, the court has discretion to reject an improper interrogatory. Freeman v. Norfolk Western Railway Co. (1994),69 Ohio St.3d 611.
In the case sub judice, the trial court found the proposed jury interrogatories were not directed to determinative issues per Civ.R. 49(B). Tr. at 517. We have reviewed the four aforecited proposed interrogatories, and we find the trial court did not abuse its discretion in refusing to submit the interrogatories to the jury.
The Second and Third Assignments of Error are overruled.
 IV, V
In its Fourth and Fifth Assignments of Error, CDT challenges the following two jury instructions:
 1). If you find that the goods failed in any respect to conform to the contract, F.C. Machine's rejection of the goods was proper.
 2). F.C. Machine who has accepted goods may revoke the acceptance if the mold did not conform with the terms specified in the drawings, it substantially impaired the value of the goods to F.C. Machine and if F.C. Machine accepted the goods without discovery of the non-conformity if the acceptance was caused by difficulty of discovery before the goods were accepted and by the assurances of Custom Design. * * *.
Our standard of review on a claim of improper instructions is to consider the jury charge as a whole, and determine whether the charge given misled the jury in a manner materially affecting the party's substantial rights. Kokitka v. Ford Motor Company (1995), 73 Ohio St.3d 89,93.
Turning to CDT's first challenged instruction, the Ohio Supreme Court has held: "The long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not sufficient to breach the contract." Ohio Farmers Ins. Co. v. Cochran (1922),104 Ohio St. 427, paragraph two of the syllabus. However, "[f]or the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract." Wengerd v. Martin (May 6, 1998), Wayne App. No. 97CA00046, unreported, quoting Wyandot RealtyCo., Inc. v. Merchandise Wholesalers, Inc. (Aug. 12, 1981), Montgomery App. No. 7166, unreported. In the case sub judice, the evidence revealed that the mandrel cone's defects could not be remedied such that appellee would be able to satisfy its customer, Alliant. We do not find that the absence of the doctrine of substantial performance in the instructions misled the jury.
In regard to CDT's second challenged instruction, based on our analysis under the first assigned error, we find no merit in CDT's position.
The Fourth and Fifth Assignments of Error are overruled.
 VI
In its Sixth Assignment of Error, CDT argues that the trial court erred in instructing the jury that the delivery date of August 15, 1999, could be considered as a deadline and part of an express warranty. We disagree.
As recited herein before, our standard of review on a claim of improper instructions is to consider the jury charge as a whole, and determine whether the charge given misled the jury in a manner materially affecting the party's substantial rights. Kokitka, supra. Additionally, "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Civ.R. 51(A). CDT counsel entered a general objection to any instruction regarding express warranty, asserting that such would not be appropriate under the facts of the case. Tr. at 515. However, appellant did not specifically raise his present objection to the court's reference to the August 15, 1999 "deadline." We are thus not inclined to review appellant's argument in this regard, even under the "plain error" doctrine, as the Ohio Supreme Court has cautioned against excessive application of plain error analysis:
 We do not hold that application of the plain error doctrine may never be appropriate in civil cases. However, we do reaffirm and emphasize that the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself. (Emphasis omitted.) Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 122, 679 N.E.2d 1099.
We will, however, consider appellant's general contention that an express warranty instruction should not have been given. R.C. 1302.26(A) states in pertinent part:
Express warranties by the seller are created as follows:
 (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. * * *
The parties' contract states, inter alia, the following:
 Furnish labor and material to fabricate and thermo stress relieve one (1) P.A.F. Mandrel per drawing No. 83343J00901 specifications and flag notes 1 through 19.
 Welding to conform to specification No. 83008J01 818, class X.
 Sufficient stock to be left on all machined surfaces.
We are unpersuaded that the court's instruction regarding an express warranty misled the jury under the facts and circumstances of this case. In addition, the subsequent terms of the contract do not support CDT's ancillary proposition that the parties agreed to liquidated damages of $300 per day for actual breach.
The Sixth Assignment of Error is overruled.
 VII
In its Seventh Assignment of Error, CDT argues that the trial court erred in failing to grant a directed verdict on the grounds that appellee was not the real party in interest. We disagree.
The standard for granting a directed verdict is set out in Civ.R. 50(A)(4):
* * *
 (4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
CDT relies solely on the following exchange during the cross-examination of John Beno, appellee's vice president of manufacturing:
 Q. By waiting for after the trial are they [Alliant] expecting you, if you get any money on this trial, to give them at least 49,000 of that?
A. That's my understanding.
 Q. In other words, they have an assignment of 49,000 of this claim?
A. That's correct.
Q. Do you have that in writing?
A. I have this in writing.
Tr. at 198.
In response to the motion for directed verdict, the court concluded that the aforesaid did not "rise to the level of a legal assignment." Tr. at 461.
"An assignment may be conditional, revocable, or voidable by the assignor * * *." Blackford Hord Enterprises v. Wood (Aug. 20, 1990), Crawford App. No. 3-89-6, unreported, quoting 3 Restatement of the Law 2d, Contracts (1981) 54, Assignment and Delegation, Section 331. Beno's testimony provides little guidance as to the specifics of the arrangement between appellee and Alliant. The trial court offered CDT's trial counsel the opportunity to recall Beno to explore the issue, which was declined. Tr. 460-461. Moreover, the proper test to determine who is the real party in interest is: "Who would be entitled to damages?" Nuco Plastics,Inc. v. Universal Plastics, Inc. (1991), 76 Ohio App.3d 137, 143, citingLyons v. Chapman (1931), 40 Ohio App. 1, 6. At best, Alliant would stand merely as a partial assignee under these circumstances in light of the $120,000 verdict rendered. We therefore find no error in the court's denial of a directed verdict under the facts of this case.
The Seventh Assignment of Error is overruled.
 VIII
In its Eighth Assignment of Error, CDT contends that the jury's verdict was against the manifest weight of the evidence. We disagree.
As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
Appellee, as plaintiff below, called John Beno, its vice president of manufacturing. He testified that the parties were aware of the necessity of the cone having a certain wall thickness, with a limited "plus or minus" tolerance. Tr. at 131. Upon the first inspection by appellee after the delivery of August 14, 1999, he readily observed waves in the outside shell, i.e., high and low spots. After setting the piece up on an indicator machine for testing, Beno and his staff "* * * knew right there, without checking diameters even, there was so much of a variance of the wall thickness that if we were to cut it, it was going to be all over the place." Tr. at 146-147. He subsequently testified as to his inspection of the cone after it was first sent back and returned from CDT:
 A. * * * After it was welded, the three big areas, it was then put back in the furnace to do stress relieve again, approximately 1100 degrees.
 Because of all the heavy weld that was going on, our customer wanted the relieve be done again. Everybody agreed.
 Then once it was brought back up to F. C. Machine, we put it back on our machine again and found those three big areas had sunk in, sunk way back in again.
Q. Okay.
 Ah, well, with — when the part came back, could it have been machined by F. C. to get to the tolerance required of the contract?
A. No.
Tr. at 153.
Gary Lewis, employed as an estimator for appellee, similarly recalled the high and low spots on the shell, which CDT tried to remedy by building up via welding. Tr. at 352. After appellee got the piece back again, its workers tried to machine it to specifications, which Lewis recalled as follows:
 They found trying to machine it we would never make a part because we were machining certain areas and where they welded up, we were barely touching. Some of them we didn't, hadn't even touched yet.
Tr. at 354.
Lewis testified further that he tried to keep Alliant apprised of the situation; however, sometime in the early part of October 1999, Alliant canceled its order. Tr. at 359.Treasurer Robert George additionally testified in detail as to the monetary damages incurred by appellee. Tr. at 416-428. Appellee also called on direct examination three former employees at CDT who had firsthand involvement in the mandrel cone project. Based on our review of the transcript and the exhibits provided in the record, we conclude that competent, credible evidence supported the jury's verdict. The jury's verdict and award was not against the manifest weight in the evidence.
The Eighth Assignment of Error is overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs assessed to appellant.
Hon. W. Scott Gwin, P. J. Hon. Sheila G. Farmer, J. Hon. John W. Wise, J. concur.