DECISION AND JUDGMENT ENTRY
Duane Speakman appeals his conviction for assault following a jury trial in the Circleville Municipal Court. He assigns the following errors:
ASSIGNMENT OF ERROR NO. 1:
 DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR IN ITS CHARGE TO THE JURY?
 ASSIGNMENT OF ERROR NO. 2:
 DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT REFUSED TO PERMIT DEFENDANT, ON DIRECT EXAMINATION, TO IDENTIFY HIS LANCASTER HOSPITAL EMERGENCY ROOM RECORD (EXHIBIT A) AND DR. LEFKOWITZ'S LETTER (EXHIBIT B), TO PERMIT DEFENDANT TO TESTIFY ABOUT THEM AND TO INTRODUCE THEM INTO EVIDENCE?
 ASSIGNMENT OF ERROR NO. 3:
 IS THE VERDICT NOT SUSTAINED BY AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE?
 Having found merit in appellant's first assignment of error, we reverse his conviction and remand this case to the trial court.
 I.
On October 29, 1999, a fight broke out at the Casino Tavern in Circleville, Ohio between Kevin and Ernest Parsons and appellant, Nelson Speakman and Clifford Browning. This altercation was preceded by a fight in August 1999 involving appellant, Nelson Speakman and Clifford Browning, against Kevin Parsons and his brother, Mark Parsons. During the first fight, Mark Parsons struck appellant with a hammer, fracturing his leg. Appellant was still on crutches at the time of the second incident.
At the trial involving the second incident, there was conflicting testimony about both who started the fracas and who ended up punching whom. Two bar employees, a police officer, appellant and his cohorts, as well as the "victims" all testified. To say that they saw things differently would be an understatement. Our summary of that conflicting saga appears as an appendix to this opinion. In any event, the jury found the state's version of the events to be credible and appellant has taken this appeal.
 II.
In his first assignment of error, appellant argues that the court committed prejudicial error by charging the jury improperly. We agree.
Jury instructions must be tailored to the facts in each case. Therefore, only the instructions applicable to the facts in a case should be given. Avon Lake v. Anderson (1983), 10 Ohio App.3d 297,299. Generally, a trial court should give requested instructions "if they are a correct statement of the law applicable to the facts in the case." Murphy v. Carrollton Mfg.Co. (1991), 61 Ohio St.3d 585, 591. However, jury instructions must be viewed in their totality. Margroff v. Cornwell QualityTools, Inc. (1991), 81 Ohio App.3d 174, 177; Yeager v. RiversideMethodist Hosp. (1985), 24 Ohio App.3d 54, 55. If the totality of the instructions clearly and fairly expresses the law, a reviewing court should not reverse a judgment based upon an error in a portion of the charge. Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89,93; Margroff at 177. Further, a strong presumption exists in favor of the propriety of jury instructions. Brooks v.Mihm (May 3, 1995), Pickaway App. No. 93CA24, unreported. Whether the jury instructions correctly state the law is a question of law which we review de novo. Murphy, supra, at 591.
Appellant argues that the court incorrectly stated the law regarding self-defense, failed to advise the jury on defense of a third party, and improperly provided the jury with written excerpts of the original jury instructions as well as excerpts not originally charged. The state maintains that the jury instructions as a whole were adequate and the court could have refused to even give a self-defense instruction as the evidence was insufficient to support that defense; furthermore, any errors in the instructions were not prejudicial and were cured when the jury was provided with the correct instructions.
Defense of Another
Appellant first argues that the court erred in failing to instruct the jury on "defense of another" as outlined in 4 Ohio Jury Instructions 411.33(3). He asserts that there was evidence that he struck Ernest Parsons with a crutch while defending Clifford Browning. Therefore, it was prejudicial for the court to refuse to give the requested instruction. Appellant acknowledges that the court made two references during the jury instructions to "defense of another person" but maintains that these two references were insufficient as they did not contain the entire relevant instruction and did not make clear to the jury that appellant could lawfully defend his friend.
The state argues that while the law is clear that one can intervene to protect a family member, there is no clear holding that one can intervene to protect a stranger. We disagree. InState v. Wenger (1979), 58 Ohio St.2d 336, 340, the Supreme Court of Ohio held that "one who intervenes to help a stranger stands in the shoes of the person whom he is aiding* * * ." The Court also noted that the intervenor is only justified in using force if the person he is aiding is justified in using force. Id.
The state further argues that whether the evidence is sufficient to justify a jury instruction on this defense is in the trial court's discretion. See Renfro v. Black (1990), 52 Ohio St.3d 27,30. The state maintains that while appellant and Browning testified that Ernest Parsons had overcome Browning, the other witnesses testified that Browning was the aggressor. Based on this testimony, the state argues that the trial court was not required to give an instruction on "defense of another."
However, "[i]t is the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue." Bostic v. Connor (1988),37 Ohio St.3d 144, 147. (Emphasis sic.) While the state may not believe appellant or Browning, they both testified that the Parsons brothers were the initial aggressors and that Ernest Parsons was beating Browning. Thus, the evidence supports giving the instruction on defense of another.
We are troubled by the fact that appellant never filed a written request for an instruction on "defense of another" as required by Crim.R. 30(A). Generally, failure to comply with Crim.R. 30(A) constitutes a waiver of any error for failing to give the proposed instructions. State v. Thompson (Nov. 9, 1993), Ross App. No. 92CA1906, unreported, citing State v. Cook (1992),65 Ohio St.3d 516, 526. However, in State v. Williford (1990),49 Ohio St.3d 247, 252, the Ohio Supreme Court held that "where the trial court fails to give a complete or correct jury instruction on the elements of the defense charged and the defenses thereto which are raised by the evidence, the error is preserved for appeal when the defendant objects in accordance with the second paragraph of Crim.R. 30(A), whether or not there has been a proffer of written jury instructions in accordance with the first paragraph of Crim.R. 30(A)."
The court made two statements regarding "defense of another" during the jury instructions.[1] Therefore, we believe that the court did not reject that instruction, but rather, failed to give the complete instruction so that the jury could understand the applicability of that defense. As appellant voiced an objection to the adequacy of the "defense of another" instruction that was given, we believe he did not waive the error.
In sum, we must conclude that two passing references to "or another" were insufficient to make it clear to the jury that appellant had the right to defend Clifford Browning under certain circumstances. Rather, the court should have given the instructions found at 4 Ohio Jury Instructions 411.33(3), or its equivalent, to the jury.[2]
Duty to Retreat
Appellant also asserts that the court erred in telling the jury that one of the elements of self-defense is that the defendant "must not have violated any duty to retreat or avoid the danger." The state concedes that there is no requirement that a person retreats before using non-deadly force but argues that the court could have refused to even give the self-defense instruction because there was no evidence that Kevin or Ernest Parsons struck the first blow. The state further argues that this error was cured when the jury asked for a copy of the self-defense instructions and was provided with the correct instructions.
In State v. Perez (1991), 72 Ohio App.3d 468, the Tenth District Court of Appeals reversed the defendant's conviction for felonious assault because the judge gave an identical instruction. The court noted that there is no requirement that a person retreat, if possible, before using non-deadly force. Id. at 472, citing Columbus v. Dawson (1986), 33 Ohio App.3d 141.
Furthermore, we disagree with the state's argument that there was insufficient evidence to support self-defense. Appellant testified that Kevin Parsons kicked his crutch out from underneath him and he swung his other crutch in order to defend himself from a pending attack. Whether or not the appellant was at fault for creating the situation giving rise to the fight depends on whose version of events the jury believed. The trial judge also obviously felt there was sufficient evidence to require the self-defense instruction.
We also disagree with the state's position that the court "cured" the defect in the oral instruction by providing the jury with the written self-defense instruction. While the written instruction did not include this "duty to retreat" language, we have no way of determining if the jury ignored that part of the oral instruction in reaching its decision.[3] Therefore, we find that the court erred in including this language in its original instructions to the jury.
Great Bodily Harm
Next, appellant asserts that the court erred in instructing the jury that appellant could only use such force as "was not likely to cause death or great bodily harm." He contends that he was entitled to use as much force as necessary to protect himself.
The model jury instructions read:
411.33 Self-defense against danger of bodily harm
* * *
 2. SELF-DEFENSE. To establish self-defense, the defendant must prove:
* * *
 (B) the defendant had reasonable grounds to believe and an honest belief, even though mistaken, that he/she was in (imminent) (immediate) danger of bodily harm and that his/her only means to protect himself/herself from such danger was by the use of force not likely to cause death or great bodily harm. (Emphasis added.)
411.35 Self-defense-test for reasonableness
* * *
 3. EXCESSIVE FORCE. The law does not measure nicely the degree of force which may be used to repel an attack. However, if the defendant used more force that [sic] reasonably appears to be necessary under the circumstances and if the force used is so greatly disproportionate to his/her apparent danger as to show an unreasonable purpose to injure (insert name of assailant), then the defense of self-defense is not available.
 "To establish self-defense in a nondeadly-force case, one may use such force as the circumstances require in order to defend against danger which one has good reason to apprehend." Chillicothe v. Knight (1992), 75 Ohio App.3d 544, 550; see, also, State v. Fox (1987), 36 Ohio App.3d 78. While the model jury instructions could be clearer, we do not believe they are inconsistent with this principle of law.
The law allows a person confronted with a threat of death or great bodily harm to utilize deadly force in self-defense. Fox
at 79. However, to allow a person confronted with non-deadly force to utilize deadly force in self-defense would be inherently unreasonable. Therefore, when giving a non-deadly force self-defense instruction, it is not improper for the court to state that such a defense is only applicable if the force used by the defendant did not rise to the level of deadly force, i.e. force likely to cause death or great bodily harm. The trial court did not err in including this language in the instructions to the jury.
Revenge
Appellant also asserts that the trial court erred in telling the jury that self-defense is inappropriate if the force used is so grossly disproportionate as to show revenge or an evil purpose. We disagree.
The current recommended jury instruction, cited above, states that if the amount of force used is so disproportionate that it shows an "unreasonable purpose to injure," the defense of self-defense is unavailable. The court below merely changed the wording of the recommended instruction; the intent remained the same. The court retains discretion to use its own language to communicate legal principles. See Youssef v. Parr, Inc. (1990),69 Ohio App.3d 679, 690. The language the court used in this regard conveyed the appropriate legal standard and the use of the word "revenge" was not improper. If anything, the instruction narrowed the grounds upon which the defense would be unavailable to the appellant, and thus inured to his benefit.
Written Jury Instructions
Last, appellant argues that the court erred in providing the jury with written jury instructions that did not comport with the previous oral instructions. We agree with appellant that the two sets of instructions are inconsistent with one another. Further, despite the state's contention that the written instructions corrected various errors, we agree with appellant that the written instructions contained some of the same errors. At any rate, we have no way of determining which instructions the jury relied on in rendering its guilty verdict. Therefore, we find the court erroneously instructed the jury on the issues of defense of another and duty to retreat.
Conclusion
We must not reverse a conviction due to error in the jury instructions unless the error is so prejudicial that it may induce an erroneous verdict. Parma Heights v. Jaros (1990), 69 Ohio App.3d 623,630. Here, the combination of errors was prejudicial to appellant and an erroneous verdict may have been rendered. Therefore, we sustain appellant's first assignment of error.
 III.
In his second assignment of error, appellant argues that the court erred when it refused to allow him to introduce his emergency room records and a letter from his treating physician regarding the injury he sustained in the first fight.
Decisions regarding the admissibility of evidence are within the sound discretion of the trial court. State v. Lowe (1994),69 Ohio St.3d 527, 531. An appellate court will not interfere with the trial court's determination regarding the admissibility of evidence absent an abuse of discretion. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Franklin Cty. Sheriff's Dept. v. State Emp. RelationsBd. (1992), 63 Ohio St.3d 498, 506; Wilmington Steel Products,Inc. v. Cleveland Elec. Illum. Co. (1991), 60 Ohio St.3d 120, 122. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 138, citing Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
Evid.R. 401 defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Appellant cites several reasons why this evidence was relevant to his case.[4]
Appellant argues that the exhibits corroborate the occurrence of the first incident, the extent of the injuries he suffered, and his fear at the time of the second fight. There was no dispute at trial regarding the occurrence of the initial fight or the involvement of the Speakmans, Clifford Browning, and Kevin Parsons in that fight. Likewise, the state never disputed that appellant's leg was broken as a result of that fight or that he was on crutches in October 1999. In fact, the state even introduced one of the crutches into evidence. Whether or not appellant was utilizing one or two crutches on the evening of the second fight cannot be discerned from the records; even if appellant's doctor told him to use two crutches, he could have chosen to use only one.
Appellant's contention that this evidence was necessary to show his fear of Ernest and Kevin Parsons is without merit. Appellant himself testified that Mark Parsons was the one who struck him with a hammer and Mark was not present on the evening of the October fight. There was testimony that Kevin Parsons, who was present during both fights, fought with appellant at some point during the initial fight. However, neither Kevin nor Ernest caused the ankle injury, so the medical records pertaining to it are irrelevant for purposes of proving that appellant's fear justified his assault on Ernest Parsons.
Likewise, the records would only provide cumulative proof that appellant was "unlikely to be an aggressor because he was physically incapable of sustaining an attack or defending an attack." There was abundant testimony about the injuries appellant sustained in the first altercation. The state did not really contest that issue. Furthermore, the medical records indicate that appellant sustained a fracture to his leg, not that he was incapable of starting a fight especially by swinging a crutch. None of the "victims'" testimony regarding appellant's actions would have presumptively been rendered false by introduction of the records.
Appellant also contends that the records are necessary to show that Kevin Parsons attacked appellant with such force during the second fight that his leg was more severely broken the second time. Appellant attempted to introduce a letter from his doctor dated April 11, 2000, which details the history of his injury. According to this letter, appellant was initially examined on August 10, 1999 and not seen again until November 15, 1999. The doctor noted that the initial fracture did not heal after three months and that surgery was required but never indicated that this was a result of the second altercation.
In summary, the information contained in the medical records and the letter from appellant's physician is either irrelevant or cumulative. Even if the court had erred in failing to submit this information to the jury, that error would not have been prejudicial to appellant as many of the state's witnesses testified to the same information that appellant attempted to introduce into evidence through the report and letter. Further, the court did not limit appellant's testimony regarding the initial fight or the extent of his injuries from it. Appellant's second assignment of error is overruled.
 IV.
In his third assignment of error, appellant argues that the jury verdict is against the manifest weight of the evidence. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction."State v. Getsy (1998), 84 Ohio St.3d 180, 193. The reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211,2218, 72 L.Ed.2d 652. The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v.Thomas (1982), 70 Ohio St.2d 79, 80; State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The reviewing court may reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. On the other hand, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
Here, there is substantial evidence upon which the jury could conclude that appellant is guilty of assault. Appellant admitted hitting Ernest Parsons with his crutch; the only question is whether he was acting in self-defense or in defense of Clifford Browning. The jury was free to credit the state's version of the fight and conclude that appellant started the fight and the affirmative defenses did not apply. Appellant's conviction is overturned for the reasons outlined in the first assignment of error; however, we cannot conclude that the conviction is also against the manifest weight of the evidence.
Appellant's third assignment of error is overruled.
Having sustained appellant's first assigned error, we reverse and remand this case for a new trial.
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that the appellant recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ________________________ William H. Harsha, Judge
Abele, P.J. Evans, J.: Concur in Judgment and Opinion.
[1] The court stated:
 * * * The defendant's [sic] justified in using some force in self[-]defense reasonably believing that, that conduct is necessary to defend himself or another against the imminent use of unlawful force and if the force used was not likely to cause death or great bodily harm. Once again honest mistake is an appropriate excuse if the defendant or either of the defendants had reasonable grounds and an honest believe [sic] that he or another person was in imminent danger of the use of unlawful force against that person and the only means to protect himself was the use of force then he was justified even though he may have been mistaken in the existence of the necessity to defend himself. * * * (Emphasis added.)
[2] 4 Ohio Jury Instructions 411.33(3) states:
 The defendant claims to have acted in defense of (name of person defended). The defendant had no greater rights than (name of person defended) and was justified in using force not likely to cause death or great bodily harm, only if (name of person defended) was not at fault in creating the situation giving rise to (describe the event in which the use of non-deadly force occurred), and the defendant had reasonable grounds to believe and an honest belief that (name of person defended) was in (imminent) (immediate) danger of bodily harm, and that the only means protecting him/her was by the use of force not likely to cause death or great bodily harm.
[3] We are not, however, stating that a court can never cure an erroneous jury instruction. In such a case, the court should clearly explain to the jury that they should follow the correct instruction and disregard the erroneous instruction.
[4] The parties agreed prior to trial that there would be no objection based upon hearsay or authenticity.
 APPENDIX
SUMMARY OF TRIAL TESTIMONY
Samantha Haselton testified that she was working at the bar on the evening of October 29, 1999. Kevin and Ernest Parsons were sitting at the end of the bar and appellant and Nelson Speakman walked up to them; Clifford Browning was further behind the Speakmans. Ernest and Kevin Parsons turned around and words were exchanged. Ms. Haselton observed appellant swing his crutch upwards but she could not determine if he was swinging it at someone or trying to keep himself from falling. She saw appellant throw a punch at Ernest Parsons but she was not certain whether appellant struck Ernest with either the crutch or the punch. Ms. Haselton then went to call the police.
Ranelle Lowther was also working at the bar on the evening of the fight but was in the back of the bar. Ms. Lowther heard a loud rumble coming from the front of the bar and went towards the front where she observed several men fighting. She yelled for everyone to stop when she got to the front of the bar but had trouble getting Clifford Browning to stop punching whoever he had on the floor at the time. Ms. Lowther admitted giving a statement to the police on the evening of the altercation indicating that appellant was hitting Ernest Parsons with a crutch, Clifford Browning was trying to break Kevin Parsons' arm, and appellant kept hitting and swinging his crutches. She had no independent recollection of these activities at the time of trial but acknowledged that her memory on the date of the incident was more accurate than at trial. On cross-examination, Ms. Lowther testified that she definitely saw Clifford Browning strike Ernest Parsons.
Kevin Parsons testified that he and his brother were sitting at the end of the bar when the Speakmans came up behind them. Kevin noticed someone behind him and turned around. Appellant swung his crutch at Ernest and Kevin tried to jump in front of Ernest to protect him. Kevin testified that prior to this, he had not kicked appellant's crutch or touched him at all he had not even seen him. Kevin was not sure where the crutch struck, if it struck at all. He then ended up against the wall and on the floor, defending himself. Kevin was not certain who he was fighting, but it was not either of the Speakman brothers. Kevin saw Clifford Browning hitting Ernest and appellant swinging a crutch.
Ernest Parsons testified that he had never met either of the Speakmans or Clifford Browning prior to this incident. He left his bar stool to go the bathroom and Browning asked him, "What's up, bitch?" Ernest ignored him and returned to the bar. He began playing a trivia game and saw Browning down the bar. A few minutes later, Ernest turned around and saw appellant swinging a crutch at him. He threw his hand up and the crutch glanced off his hand and struck him in the head. Ernest heard appellant say something but couldn't understand what he was saying. He did not see Kevin kick appellant's crutch out from under him. Clifford Browning then jumped on top of Ernest and they ended up wrestling around on the ground. Nelson Speakman began kicking Ernest around the head and appellant struck Ernest again with his crutch. Ernest testified that he did not punch Browning at all because Browning is much larger than him and was on top of him most of the time. Ernest testified that the crutch definitely made contact with his head two times. As a result, he required eight stitches in one area of his head and twelve in another, and had a concussion. His hand was also cut where the crutch grazed it.
Officer Gordon Welt testified that he arrived at the rear entrance of the Casino Tavern and observed the Speakmans exiting the establishment. Appellant was doing a "speed hobble" on one crutch, trying to get to the car as quickly as possible. He had one crutch in his hand and was trying to hold himself up with the other one. Officer Welt seized the crutches as evidence after Ernest informed him that he'd been hit with a crutch. The crutches were in pretty bad shape and there was blood on the handle of one of them.
Clifford Browning testified that he has known the Speakmans for a long period of time and knew Kevin Parsons from the original fight. Browning saw Ernest near the bathroom and sensed some hostility from him so he made a comment calling him a "bitch." Browning later realized that Ernest was not present at the first fight but he looked similar to someone at that fight. Browning saw appellant walk past the Parsons brothers but Browning never told appellant that they were there. While he was standing at the bar, Browning saw appellant walk up behind Ernest and Kevin Parsons. Words may have been exchanged and then Ernest kicked one crutch out from under appellant and wrapped his body around appellant. Appellant was up against a table trying to hold up his other leg and trying to defend himself. Browning knew appellant could not defend himself very well because of his injury, so he grabbed Ernest and rolled him over to the wall. Browning tripped over a stool and Ernest ended up on top of him, hitting him numerous times. When appellant realized Browning was in trouble, he began hitting Ernest with his crutch. Browning testified that he was hit in the face numerous times by Ernest and that even though appellant is small, he is powerful. Browning testified that he left immediately after the fight ended.
Nelson Speakman testified that in August, he saw Mark Parsons hit appellant in the leg with a hammer. On October 29th, when he and appellant arrived at the bar, appellant went to talk to the disc jockey while he stopped and talked to some girls he knew. Nelson heard a crutch going across the floor, turned around, and saw Ernest and Kevin jumping on appellant. Nelson went over and grabbed Kevin, and he and Kevin went backwards against the table and started fighting. Nelson testified that he never saw appellant hit anyone with the crutch and he did not kick Ernest, though he did kick Kevin.
Appellant testified that at the initial fight, Mark Parsons hit him with a framing hammer and broke his right ankle in two. When his cast was removed, his ankle was still broken and he had to have surgery to repair it.
On October 29th, appellant walked into the bar and saw the disc jockey sitting at the bar near Kevin. He walked up to her and Kevin turned around and stated "there's the cripple." One crutch went flying out from underneath appellant and he believes that Kevin kicked it. Appellant then swung his crutch at Kevin in defense but hit Ernest in the head. Kevin and Ernest came at appellant and he held them out with his arms until his back hit the wall. Nelson and another bar patron grabbed the Parsons brothers and then Browning became involved. Appellant went looking for his crutches and then saw Ernest on top of Browning, striking him. Appellant admitted striking Ernest on the head with the crutch.