This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Michael Hoyt, appeals from his convictions for obstructing justice in the Lorain County Court of Common Pleas. We affirm his conviction, but reverse his sentence and remand for resentencing.
On January 12, 2000, the Lorain County Grand Jury indicted Defendant on six separate counts: (1) two counts of obstructing justice, in violation of R.C. 2921.32(A)(1); (2) two counts of obstructing justice, in violation of R.C. 2921.32(A)(2); and (3) two counts of obstructing justice, in violation of R.C. 2921.32(A)(5). A jury trial followed. The jury found Defendant guilty on both counts of obstructing justice, in violation of R.C. 2921.32(A)(1), and both counts of obstructing justice, in violation of R.C. 2921.32(A)(5); however, the jury found Defendant not guilty on both counts of obstructing justice, in violation of R.C.2921.32(A)(2). The trial court sentenced him accordingly. Defendant timely appeals and raises three assignments of error, which we have rearranged for ease of review.
 ASSIGNMENT OF ERROR III "Defendant's conviction was against the manifest weight of the evidence."
In his third assignment of error, Defendant challenges the adequacy of the evidence presented at trial. Specifically, Defendant avers that his convictions for obstructing justice were contrary to the manifest weight of the evidence. We disagree.
 "[A] manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Furthermore, the evaluation of the weight to be given to the evidence and evaluation of the credibility of the witnesses are functions primarily reserved for the trier of fact. State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4.
Defendant was found guilty of obstructing justice, in violation of R.C. 2921.32(A)(1) and (5). R.C. 2921.32 provides in pertinent part:
 "(A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime, and no person, with purpose to hinder the discovery, apprehension, prosecution, adjudication as a delinquent child, or disposition of a child for an act that if committed by an adult would be a crime or to assist a child to benefit from the commission of an act that if committed by an adult would be a crime, shall do any of the following:
"(1) Harbor or conceal the other person or child;
"* * *
"(5) Communicate false information to any person."
At trial, Clifford Allen Bryant ("Bryant") testified that he and Jon Hoyt ("Jon"), Defendant's son, stole a car in November of 1999, and headed toward Florida. He further testified that during their trip to Florida they stole two more cars. Bryant stated that before returning to Ohio, he and Jon stopped at Jon's uncle's house, which is located in North Carolina. He said that Defendant arrived shortly thereafter, explained that the police were looking for them regarding the three cars that they had stolen, and, subsequently, drove them back to Grafton, Ohio, which is located in Lorain County. He testified that he and Jon stayed at Defendant's apartment in Grafton for approximately one week. While at the apartment, Defendant told them to "keep the volume down" and close the blinds. Additionally, he said that his sister, Crystal Bryant ("Crystal"), came to Defendant's apartment and spoke with Defendant. Bryant testified that Defendant told Crystal that he had not seen either boy. After approximately one week at Defendant's apartment, Bryant stated that Defendant took them to a wooded area on the Heitsches' farm to avoid police detection. During their two weeks on the farm, Bryant explained that he and Jon slept in a bus that was converted into a camper. He also stated that Defendant was at the farm with them when he was not working and they spent Thanksgiving together. Bryant declared that Defendant told him to pose as his son; specifically, Defendant gave him a social security card that belonged to Michael Hoyt, Defendant's son. Finally, Bryant asserted that although Defendant knew the police were looking for him and Jon, Defendant did not suggest that they turn themselves in to the police.
Deputy Todd Weegmann testified that he went to Defendant's apartment to obtain Defendant's statement for release of Jon's dental records on November 29, 1999. Deputy Weegmann stated that Defendant gave him the statement. He further stated that Defendant maintained that he had not seen Jon.
Crystal testified that before Thanksgiving she went to Defendant's apartment to tell him that the police were looking for Bryant and Jon and to ask if he had seen either boy. Crystal further testified that she walked by Defendant's apartment a couple of days later and noticed that Defendant's cars were not in the parking lot; however, she saw a light turned on and then turned off in his apartment. She further noted that the blinds in his apartment were closed. Finally, Crystal stated that Bryant told her that he heard her voice when she came to Defendant's apartment and, at that time, both he and Jon were in Defendant's apartment.
Karen Heitsche ("Heitsche") testified that she and her husband own a farm. She further testified that Defendant helped her husband "scrap" cars and with yard work. Heitsche stated that in November and December of 1999, she saw Defendant working on her farm with two boys named Jon and Bryant.
Sergeant Annette McLaughlin testified regarding statements made by Defendant. Specifically, Sergeant McLaughlin stated that Defendant said that he first had contact with Jon on Thanksgiving Day. She further stated that Defendant explained that Jon and Bryant arrived on bicycles at the Heitsches' farm, they stayed for approximately one hour, and then they left the farm.
Officer Douglas Meredith stated that Bryant told him that he and Jon stayed at Defendant's apartment prior to Thanksgiving Day. Officer Meredith further stated that Bryant told him that they stayed at the farm during Thanksgiving Day. During the timeframe that Bryant and Jon were at the farm, Officer Meredith testified that he spoke with Defendant and asked him if he had heard from either boy. He further testified that Defendant told him that he had not heard from either Bryant or Jon. Officer Meredith deduced that Bryant and Jon were with Defendant for approximately three weeks.
Defendant presented two witness on his behalf, Richard Hendricks ("Hendricks") and Mark Smith ("Smith"). Both Hendricks and Smith testified that they went to the Heitsches' farm to retrieve car parts. While on the farm, they testified that they did not see Defendant, Bryant, or Jon.
In the case sub judice, the jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. See State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting Defendant of obstructing justice. Accordingly, Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I The trial court erred in instructing the jury regarding venue.
 In his first assignment of error, Defendant avers that the trial court erroneously instructed the jury regarding venue. We disagree.
An appellate court reviews a trial court's instructions to the jury under an abuse of discretion standard. See State v. Wolens (1989),44 Ohio St.3d 64, 68. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id. Additionally, a jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a manner materially affecting the complaining party's substantial rights. Ohio Farmers Ins. Co. v. Cochran (1922),104 Ohio St. 427, paragraph six of the syllabus. See, also, Kokitka v.Ford Motor Co. (1995), 73 Ohio St.3d 89, 93.
In the case sub judice, the trial court instructed the jury that they must find beyond a reasonable doubt that the offenses of obstructing justice occurred in Lorain County, Ohio. The trial court further expounded upon the jury instruction regarding venue as follows:
 "If any element of any one of the offenses charged in Counts One through Six takes place in Lorain County, then Element 2 has been proven.
 "* * * If you find that the crime of Grand Auto Theft involves either the taking of property from or bringing property to Lorain County, then Element 2 has been proven."
Defendant's argument hinges upon the second paragraph of the trial court's jury instruction regarding venue; specifically, he argues that the locale of the automobile thefts does not satisfy the venue requirement. However, construing the jury instruction as a whole, there is no evidence that the jury charge misled the jury on a matter materially affecting Defendant's substantial rights. See Ohio FarmersIns. Co., 104 Ohio St. at paragraph six of the syllabus. Particularly, the record indicates that Defendant permitted Bryant and Jon to stay at his apartment in Lorain County, Ohio. Furthermore, while in Lorain County, Ohio, Defendant told Deputy Weegmann that he had not had contact with either boy. Consequently, as the offenses of obstructing justice occurred in Lorain County, we find that the trial court did not abuse its discretion when instructing the jury regarding venue. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "The trial court erred in sentencing Defendant to consecutive sentences."
In his second assignment of error, Defendant alleges that the trial court did not state the requisite statutory findings on the record to support its imposition of consecutive sentences; therefore, the trial court erred by imposing consecutive sentences. Defendant's allegation is well taken.
The imposition of sentences in felony proceedings is governed by R.C.2929.14. Specifically, R.C. 2929.14(E)(4) outlines the conditions under which a trial court may impose consecutive sentences. R.C. 2929.14(E)(4) provides:
 "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under post-release control for a prior offense.
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that the consecutive sentences are necessary to protect the public from future crime by the offender." (Emphasis added.)
R.C. 2929.19(B)(2)(c) requires a trial court to give its reasoning for imposing consecutive sentences under R.C. 2929.14. Furthermore, this court has held that the findings of the trial court need not be in the sentencing transcript if the findings are contained in the journal entry. State v. Riggs (Oct. 11, 2000), 9th Dist. No. 19846, at 4. See, also, State v. Edmonson (1999), 86 Ohio St.3d 324, 327. As such, this court may review both the sentencing hearing transcript and the journal entry to determine whether the trial court has stated the requisite findings under the statute. State v. Nixon (Apr. 25, 2001), 9th Dist. Nos. 00CA007638 and 00CA007624, at 5. An appellate court must review the record to determine if the requisite findings occurred when an appellant contends that the trial court did not make the required findings. Statev. McLeod, 9th Dist. No. 20757, 2002-Ohio-1111, at ¶ 15.
Upon a review of the sentencing transcript, we find that the trial court did not articulate its findings underlying its imposition of consecutive sentences. Particularly, the transcript reveals that the trial court found "the minimum sentence is not appropriate in terms of protection of the community * * * nor * * * [is] the maximum sentence * * * appropriate[,]" thereby stating its reason for exceeding the minimum sentence. Contrarily, the trial court did not find that consecutive sentences were necessary to protect the public from future crime or to punish Defendant. See R.C. 2929.14(E)(4). Rather, the trial court merely imposed consecutive sentences without articulating the required statutory findings.
Notwithstanding the fact that the sentencing transcript does not contain the trial court's findings, we must examine the trial court's journal entry to determine whether it contains the trial court's findings regarding the imposition of consecutive sentences. In the journal entry, the trial court found "[t]he defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant." This finding satisfied R.C.2929.14(E)(4)(c). However, in accordance with R.C. 2929.14(E)(4), the trial court was also required to find that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" The journal entry indicates that the trial court failed to make this required finding.
We find that neither the sentencing hearing transcript nor the journal entry state the requisite findings under the statute; therefore, the trial court erred in imposing consecutive sentences. Accordingly, Defendant's second assignment of error is sustained.
Defendant's first and third assignments of error are overruled and his second assignment of error is sustained. The convictions in the Lorain County Court of Common Pleas are affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
CARR, J. CONCURS.